# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## STATESBORO DIVISION

DEXTER SHAW,

        Plaintiff,

   v.

STEVE UPTON; WARDEN ROBERT
TOOLE; JOHN PAUL; JANET BREWTON;
ROY SABINE; MILTON SMITH; and LISA
FOUNTAIN,

        Defendants.

CIVIL ACTION NO.: 6:16-cv-6

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at Valdosta State Prison in Valdosta, Georgia, brought this Complaint pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act, ("RLUIPA"), 42 U.S.C. § 2000cc-1, *et al.*, contesting certain conditions of his confinement at Georgia State Prison ("GSP") in Reidsville, Georgia. (Doc. 1.) For the reasons which follow, I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims for monetary damages relief against Defendant Upton in his official capacity. Additionally, I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims against Defendant Paul, Plaintiff's claims accruing before June 12, 2014, his deprivation of property claims, access to the grievance procedure claims, First Amendment free exercise claims, and his RLUIPA claims. Further, I **RECOMMEND** that the Court **DENY** Plaintiff's request for preliminary injunctive relief. Plaintiff's request for appointment of counsel is **DENIED**. The Court **DIRECTS** the United

States Marshal to serve Defendants Upton, Toole, Brewton, Sabine, Smith, and Fountain with a copy of Plaintiff's Complaint, (doc. 1), and a copy of this Order.

## BACKGROUND

Plaintiff contends he signed up in 2009 to receive vegan/restrictive meals through the State's Standard Operating Procedure due to his sincerely held religious beliefs. (Doc. 1, p. 8.) In May 2010, Plaintiff contends Defendant Upton, who was the Warden at the high max facility in Jackson, Georgia, transferred him to GSP, despite Defendant Upton's knowledge that Plaintiff was required to be housed in a facility which participated in this meal program. After this transfer, Plaintiff contends he was denied adequate nutrition, which caused significant weight loss, deterioration of the liver and other organs, headaches, nausea, hunger, and mental anguish. (Id.) Plaintiff states he filed a grievance based on GSP officials' refusal to provide him with his required diet, and Defendant Paul informed him that GSP is not a facility which participated in the State's alternative entrée program and did not offer the vegan meals Plaintiff requested. (Id. at pp. 8–9.) Plaintiff alleges he was transferred back to the high max facility in August 2010, as retaliation for accessing the courts, and his transfer was orchestrated by Defendants Upton and Toole. (Id. at pp. 9–10.)

Plaintiff contends he was transferred back to GSP in March 2014. Plaintiff generally alleges that, while he was housed at GSP during this second occasion, Defendants were aware of his dietary needs, as required by the tenets of his religion; however, despite this knowledge, Defendants did not ensure Plaintiff received the proper food trays. Plaintiff contends he filed an emergency grievance on March 18, 2014, and Defendant Smith destroyed his grievance by refusing to issue a receipt, in violation of policy. (Id. at p. 11.) Approximately a week later, Plaintiff asserts he filed another grievance based on the denial of his religious diet, and

Defendant Smith destroyed that grievance. Plaintiff also asserts he filed a third grievance on April 29, 2014, and specifically referenced his second March 2014 grievance and its destruction by Defendant Smith, the Chief Counselor. (Id. at p. 12.)

Plaintiff avers he spoke with Defendant Toole, the Warden at GSP, during inspection and told Defendant Toole about being denied his vegan meals and adequate nutrition, and Defendant Toole told him GSP did not provide vegan meals at that time. Plaintiff asserts he stopped accepting any trays containing meat or animal byproducts on May 8, 2014. (Id. at p. 13.) Plaintiff maintains Defendants' actions were carried out with the intent to harm Plaintiff or to cause him irreparable injuries. Plaintiff states he underwent a surgical procedure on his right shoulder and, due to the lack of nutrients, his incision would not heal properly. (Id.) Plaintiff alleges he was told the only way he was going to get medical attention would be if his medical needs were urgent or presented a life or death situation. (Id. at p. 16.)

On June 12, 2014, Plaintiff states he filed a grievance against Defendant Toole claiming he retaliated against Plaintiff because he has filed grievances and accessed the courts. Plaintiff maintains Defendant Upton "ordered and condoned" this retaliation and encouraged Defendants Toole and Paul, Warden of Care and Treatment, not to provide Plaintiff with his required diet "in an ill intent (sic) to force me off of it." (Id.) Plaintiff contends Defendants Toole, Brewton (Warden of Care and Treatment), and Sabine (Medical Administrator) knew that denying Plaintiff his prescribed treatment would cause him unnecessary pain, and this denial was retaliatory in response to the filing of Shaw v. Toole, Case Number 6:14-cv-48 (S.D. Ga. May 19, 2014). Plaintiff also contends Defendant Upton ordered and condoned this retaliatory action. Plaintiff asserts Defendants Upton and Toole had the tactical squad confiscate Plaintiff's property and placed him on long-term disciplinary segregation (Tier II) despite Plaintiff not

having any disciplinary reports against him for over a year. (Id. at p. 17.) Plaintiff contends he was to get physical therapy, but his sessions stopped after only three sessions because he was housed in the Tier II unit.

Plaintiff also asserts he wrote to Defendant Sabine on July 20, 2014, and requested to be seen medically and to be provided with his prescribed physical therapy sessions. (Id.) On July 31, 2014, Plaintiff alleges he filed a proper medical request and stated he was being denied physical therapy and his range of motion was an issue. Id. Less than a week later, Plaintiff avers he was physically examined by Dr. Caravello, who filed a consult for Plaintiff to have physical therapy. Id. Plaintiff contends that Defendant Sabine refused to ensure that Plaintiff received treatment, as he was required to do. (Id. at p. 18.) Plaintiff also contends he informed Defendant Toole that the Tier II program was preventing him from having his prescribed physical therapy sessions, and Defendant Toole told Plaintiff he could perform whatever exercises he needed to do in his cell because he was not going to the medical floor. (Id. at p. 19.)

Plaintiff alleges he was issued three false disciplinary reports in August 2014, and Defendant Toole came to his cell on August 8, 2014, and commented that Plaintiff had been filing a lot of paperwork, which was not a good thing. (Id. at p. 18.) When Plaintiff asked what Defendant Toole meant by that comment, Plaintiff asserts Defendant Toole said, "It's up to you . . . I determine guilt or not, here." (Id.) Plaintiff contends Defendant Toole made it understood that he would find Plaintiff guilty of the disciplinary charges based on the grievances and lawsuits Plaintiff had filed. Id. On August 21 and 22, 2014, Plaintiff asserts he was found guilty of all three of these reports, which was contrary to the evidence. Plaintiff maintains he was not given some of the evidence he requested, and other procedural errors occurred during the disciplinary proceedings. (Id. at pp. 19–20.) Plaintiff contends Defendant Toole was required to

overturn the sanctions which were imposed, but he refused to do so as retaliation for Plaintiff having filed grievances and lawsuits. (Id. at p. 20.) Plaintiff also contends Defendant Fountain was required by procedure and law to expunge his disciplinary reports, but, upon Defendant Toole's request and because Plaintiff had filed previous complaints against Defendant Fountain, she acted in concert with Defendant Toole to deny Plaintiff due process. Id. Plaintiff contends he was deprived of $4.00 for each disciplinary report (for a total of $12.00) as a result. (Id. at p. 21.)

In addition, Plaintiff alleges Defendant Brewton was forwarded a letter on September 16, 2014, which expressed Plaintiff's concerns over being denied physical therapy for his right shoulder, that he was having problems lifting his shoulder, and his condition was worsening. (Id.) According to Plaintiff, Defendant Brewton refused to correct the denial of treatment. Plaintiff maintains he filed a proper medical request two days later and asserted he needed to see Dr. Johnson about his right shoulder and being denied his prescribed physical therapy. Id.

Plaintiff avers he continued filing grievances and making complaints about the "widespread practice" of not issuing grievance receipts at the time the grievances were accepted, which was designed to destroy properly filed grievances. (Id.) Plaintiff contends Defendant Smith destroyed his grievance in which he complained about being denied his receipts. Plaintiff states Defendants Fountain, Smith, and Toole "created and condoned" a false memo to cover up their illegal acts committed through a widespread practice/policy "designed or used to deny access to the grievance procedure." (Id. at p. 22.) Plaintiff asserts this practice/policy ultimately obstructed his access to the courts because Shaw v. Toole, 6:14-cv-48, was dismissed because he failed to exhaust his administrative remedies, which caused him to be out the $350.00 filing fee. (Id. at p. 23.)

Plaintiff seeks an injunction against Defendants Upton and Toole and their agents to cease all administrative and widespread retribution against Plaintiff because he filed grievances and lawsuits and to expunge his three disciplinary reports. (Id. at p. 26.) He names all Defendants in their individual capacities, (id. at p. 7), except for Defendant Upton, who is named in his individual and official capacities, (id. at p. 6.) Plaintiff seeks compensatory and punitive damages against all of the named Defendants.

## STANDARD OF REVIEW

Plaintiff has paid his filing fee in full. Nevertheless, the Court is required to conduct a frivolity review of Plaintiff's Complaint. See 28 U.S.C. § 1915A. Pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

When reviewing a Complaint such as the one Plaintiff has filed, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915A "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Accordingly, the Court will discuss below those claims for which Plaintiff provides some factual basis. Particularly given the far reaching allegations of the Complaint, the Court need not assess claims that are simply asserted in insufficient conclusory fashion, as those claims are not viable. Further, Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We

have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

**I.      Claims for Monetary Damages Against Defendant Upton in his Official Capacity**

As noted above, Plaintiff sues Defendant Upton in both his official and his individual capacities, while suing the other Defendants in only their individual capacities. However, Plaintiff cannot sustain a Section 1983 claim for monetary damages against Defendant Upton in his official capacity as the Assistant Facility Director for the Department of Corrections. States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty. Alden v. Maine, 527 U.S. 706, 712–13 (1999). Section 1983 does not abrogate the well-established immunities of a state from suit without its consent. Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989). Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such a defendant is immune from suit under Section 1983. Id. at 71. Here, the State of Georgia would be the real party in interest in a suit against Defendant Upton in his official capacity as an employee of the Georgia Department of Corrections. Accordingly, the Eleventh Amendment immunizes this actor from suit in his official capacity. See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989). Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims against Defendant Upton in his official capacity for monetary relief, and these claims should be **DISMISSED**.

## II.     Claims Barred by the Statute of Limitations

Plaintiff asserts factual allegations stemming from his placement at GSP for four months' time in 2010.  To the extent Plaintiff wishes for these allegations to form a partial basis for his claims in this cause of action, he cannot do so.

Constitutional claims brought pursuant to Section 1983 "are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought."  Powell v. Thomas, 643 F.3d 1300, 1303 (11th Cir. 2011).  In states where more than one statute of limitations exists, the forum state's general or residual personal injury statute of limitations applies to all § 1983 actions filed in federal court in that state.  Owens v. Okure, 488 U.S. 235, 236, 249–50 (1989).   Georgia has a two-year statute of limitations for personal injury actions.  O.C.G.A. § 9-3-33.  Although state law determines the applicable statute of limitations, "[f]ederal law determines when the statute of limitations begins to run."  Lovett v. Ray, 327 F.3d 1181, 1182 (11th Cir. 2003).  As a general rule, "the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights."  Id.  "To dismiss a prisoner's complaint as time-barred prior to service, it must 'appear beyond a doubt from the complaint itself that [the prisoner] can prove no set of facts which would avoid a statute of limitations bar.'") (quoting Leal, 254 F.3d at 1280) (alterations in original).

Plaintiff signed his Complaint on January 9, 2016, and it was filed in this Court on January 19, 2016.  (Doc. 1.)  Thus, in order for any claims accruing in 2010 to have been timely, Plaintiff would have had to have filed a cause of action in 2012 concerning those claims.  Thus, as to any events occurring in 2010, Plaintiff's cause of action in this case was filed nearly four years too late.  Should Plaintiff wish to claim the factual allegations of events occurring in 2010

were of a continuing violation variety, such an assertion would be without merit. Plaintiff was only at GSP for four months in 2010, and he was transferred back to the high max facility. Plaintiff's transfer out of GSP in 2010 would have caused the statute of limitations period to begin running at that time. See Robinson v. United States, 327 F. App'x 816, 818 (11th Cir. 2007) ("Plaintiff sufficiently alleges in his Complaint a continuing violation that did not end until he was transferred to another prison in May of 2007."). Accordingly, to the extent Plaintiff wishes for events occurring in 2010 to form a basis for the claims set forth in his Complaint filed in 2016, he cannot. Any claims arising out of events occurring in 2010 should be **DISMISSED**.[1]

### III.  Claims for Which Plaintiff Failed to Exhaust his Administrative Remedies

Plaintiff's assertions that Defendants Toole, Paul, Upton, and Smith deliberately placed him in GSP in an effort to deny Plaintiff access to a vegan diet, in accordance with his religious tenets, are also barred. These assertions formed the basis of Plaintiff's Complaint in Shaw v. Toole, 6:14-cv-48, and this Complaint was dismissed based on Plaintiff's failure to exhaust his administrative remedies. R. & R. and Order, Shaw v. Toole, et al. (S.D. Ga. July 27, 2015, and Aug. 24, 2015), ECF Nos. 65, 68. This Court exercises its discretion to take judicial notice of its own records. Brown v. Barrow, No. CV 113-03, 2013 WL 3742122, at *3 n.1 (S.D. Ga. July 15, 2013) (citing United States v. Rey, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987)); see also, Cummings v. Douberly, No. CV 214-152, 2015 WL 4477940 (S.D. Ga. July 21, 2015). Without recounting this Court's findings as to Plaintiff's efforts at exhaustion Case Number 6:14-cv-48, the Court notes that Plaintiff's contentions regarding exhaustion as to his religious diet claims are unavailing in this case at this time. To be clear, Plaintiff offers nothing in this Complaint which indicates he could have or actually did exhaust his administrative remedies as to these claims

---

[1] In addition, it appears Plaintiff has previously filed a cause of action relating to these claims. (Doc. 1, p. 10, ¶ 19.)

between the time he filed his complaint in Case Number 6:14-cv-48 and the time he filed the instant Complaint. While the Court recognizes Plaintiff's assertions that his grievances were destroyed, he made these same assertions is opposition to the motion to dismiss in 6:14-cv-48. The Court did not find these assertions availing and granted the defendants' motion to dismiss on the basis of Plaintiff's failure to exhaust in Case Number 6:14-cv-48.[2] Without anything more here, any such arguments as to these claims are equally unavailing.

The Court also notes that cause of action is currently on appeal. Order, <u>Shaw v. Toole, et al.</u>, (S.D. Ga. Feb. 9, 2016), ECF No. 84. If Plaintiff were to pay the appellate filing fee or have a properly filed application to proceed *in forma pauperis* on appeal, and the Eleventh Circuit Court of Appeals were to reverse this Court's determination, this would mean the Court would have to review the relative merits of Defendants' motion to dismiss and/or a properly filed motion for summary judgment. In addition, Plaintiff could not have two cases pending which detail the same events. For these reasons, Plaintiff's claims against Defendants Toole, Paul, Upton, and Smith relating to his religious exercise claims under the RLUIPA and the First Amendment should also be **DISMISSED**. Additionally, as these are the only claims that Plaintiff plausibly asserts against Defendant Paul, Plaintiff's claims against Paul should be **DISMISSED** in their entirety.

---

[2] The Court should not dismiss Plaintiff's "new" allegations contained in this Complaint at this initial stage based on his failure to exhaust his administrative remedies. It is not clear from the face of Plaintiff's Complaint that he did not exhaust his available administrative remedies as to his claims arising on or after June 12, 2014. However, Plaintiff is cautioned that, should his exhaustion or lack thereof be raised pursuant to a motion to dismiss, he will have to present the Court with evidence supporting his position.

## IV.     Deprivation of Property

Plaintiff contends he received monetary sanctions in the amount of $12.00 as a result of being found guilty of disciplinary infractions and in the amount of $350.00 because a previously-filed cause of action (Case Number 6:14-cv-48) was dismissed based on his failure to exhaust his administrative remedies.  These contentions give rise to a potential due process claim.

The intentional deprivation of property gives rise to a due process clause violation when the government fails to provide an adequate post deprivation remedy.  See Hudson v. Palmer, 468 U.S. 517, 533 (1984).  Pursuant to O.C.G.A. § 51-10-1, Georgia has created a civil cause of action for the wrongful deprivation of personal property.  See Byrd v. Stewart, 811 F.2d 554, 555 n.1 (11th Cir. 1987).  As the alleged deprivation of Plaintiff's property occurred in Georgia, Georgia law provides the appropriate remedy.  There is no evidence Plaintiff has pursued this remedy.  Thus, Plaintiff's deprivation of property claims should be **DISMISSED**.

## V.     Access to Grievance Procedure

Plaintiff contends Defendant Smith did not provide a receipt for his grievances or otherwise destroyed Plaintiff's grievances.  To the extent Plaintiff's contentions in this regard are his attempts to show he was denied access to the grievance procedure in violation of his constitutional rights, such an attempt must fail.

Alleged transgressions involving grievance procedures do not give rise to stand-alone claims under Section 1983.  Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam); see also Baker v. Rexroad, 159 F. App'x 61 (11th Cir. 2005) (finding that inmates neither have a liberty interest in an investigation based upon their inmate grievance, nor a liberty interest in the inmate grievance system).  Further, "[t]here is no right to a particular type of process in the handling of prison grievances. . . . [F]ederal courts simply do not sit as the ultimate appellate

tribunal for prison grievance procedures." Rienholtz v. Campbell, 64 F. Supp. 2d 721, 731 (W.D. Tenn. 1999). Accordingly, Plaintiff's claims against Defendant Smith within the context of the grievance procedure do not state a cognizable claim under Section 1983 and should be **DISMISSED**.

## VI. Due Process Claims

### A. Procedural Due Process Claims

An inmate states a cognizable claim for the deprivation of his procedural due process rights under the Fourteenth Amendment when he alleges the deprivation of a constitutionally protected liberty or property interest, state action, and constitutionally inadequate process. Shaarbay v. Palm Beach Cty. Jail, 350 F. App'x 359, 361 (11th Cir. 2009) (citing Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994)). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556, (1974). Rather, "a disciplinary proceeding, whose outcome will 'impose[ ] atypical and significant hardship on the inmate' must ensure the following due process rights: (1) advance written notice of the claimed violation, (2) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken, and (3) an opportunity to call witnesses and present documentary evidence in his defense." Asad v. Crosby, 158 F. App'x 166, 173 (11th Cir. 2005) (citing Wolff, 418 U.S. at 563–67).

Plaintiff contends he was not allowed to present evidence during his disciplinary proceedings he had requested. However, Plaintiff fails to set forth any facts indicating that the sanction he received at the conclusions of each of these proceedings—the alleged deprivation of $4.00—constitutes an "atypical and significant" hardship on him in relation to the ordinary

incidents of prison life. Moreover, this Court has held that an inmate's placement in administrative segregation alone is a non-punitive action. <u>Bradley v. Hart</u>, No. CV513-127, 2015 WL 1032926, at *5 (S.D. Ga. Mar. 9, 2015), *appeal dismissed* (July 8, 2015). Accordingly, Plaintiff fails to set forth a plausible procedural due process claim against Defendants Toole and Fountain.

**B.    Substantive Due Process Claims**

"The Due Process Clause protects against deprivations of 'life, liberty, or property without due process of law.'" <u>Kirby v. Siegelman</u>, 195 F.3d 1285, 1290 (11th Cir. 1999) (quoting U.S. CONST. AMEND. XIV). The Supreme Court has identified two situations in which a prisoner can be deprived of liberty such that the protection of due process is required: (1) there is a change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court; and (2) the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Id.</u> at 1290–91 (quoting <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995)).

In <u>Sandin</u>, the United States Supreme Court addressed whether the punishment inmate Conner received for a disciplinary violation was sufficient to invoke a liberty interest protected by the Due Process Clause. 515 U.S. at 472. Following a disciplinary conviction, Conner received 30 days' disciplinary segregation in a Special Housing Unit. <u>Id.</u> at 475. After noting that the segregation was a form of punishment, the Court concluded that it was not a dramatic departure from the conditions of Conner's indeterminate sentence. <u>Id.</u> at 485. The Supreme Court held there is no right inherent in the Due Process Clause for an inmate not to be placed in disciplinary segregation nor is there a state-created liberty interest to be free from disciplinary

segregation. Id. at 487. The Court determined that the conditions of disciplinary segregation at the prison where Conner was incarcerated were virtually indistinguishable from the conditions of administrative segregation and protective custody. Id. at 486. Also, the Court noted that the conditions of disciplinary segregation were not markedly different from the conditions in general population. Id. The Court concluded that the conditions of disciplinary segregation did not impose an "atypical, significant deprivation in which a State might conceivably create a liberty interest." Id. Thus, the Court determined that Conner was not entitled to due process protection. Id. at 487. The Court observed that this holding was a return to the due process principles of Wolff and Meachum v. Fano, 427 U.S. 215 (1976), which required an inmate to suffer a "grievous loss" before a liberty interest could be found. Id. at 478–83. The Sandin Court ruled that in the future, liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, (citations omitted), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 480, 484; see also Rodgers v. Singletary, 142 F.3d 1252, 1253 (11th Cir. 1998) (affirming that two months' confinement to administrative segregation was not a deprivation of a constitutionally protected liberty interest).

An inmate, therefore, has a liberty interest related to his confinement in segregation only if the state has created a liberty interest through the nature of the conditions. Sandin, 515 U.S. at 487. To determine whether the state has created a liberty interest, courts must look to the nature of the conditions of the confinement in relation to the ordinary incidents of prison life, rather than to the language of the regulations regarding those conditions. Id. at 484; Wallace v. Hamrick, 229 F. App'x 827, 830 (11th Cir. 2007). Courts should also consider the duration of

the confinement in segregation when determining if the confinement constitutes an atypical and significant hardship. See Al–Amin v. Donald, 165 F. App'x 733, 738 (11th Cir. 2006); see also Williams v. Fountain, 77 F.3d 372, 374 (11th Cir. 1996).

In the present action, Plaintiff has ostensibly alleged that his placement in the Tier II Unit at GSP deprived him of a liberty interest. However, Plaintiff fails to set forth facts which could lead to the conclusion that the conditions of the Tier II Unit imposed an atypical and significant hardship on him relative to the ordinary incidents of prison life. Specifically, Plaintiff asserts his placement in the Tier II Unit prevented him from being able to obtain his prescribed physical therapy sessions. This does not constitute an atypical or significant hardship. See Shaw v. Hall, et al., No. 5:12-CV-135-CAR-MSH, 2014 WL 2048383, at *20 (M.D. Ga. May 19, 2014) (concluding plaintiff's confinement in the Special Management Unit for up to 12 years' time, being subjected to handcuffing behind his back which caused pain and further injury to his shoulder, receiving alleged insufficient meal portions, and having no infirmary in the SMU did not constitute atypical or significant hardships relative to the incidents of ordinary prison life), *report and recommendation rejected on other grounds by* 2014 WL 4287467 (M.D. Ga. Aug. 28, 2014). Moreover, according to Plaintiff, he was being denied his prescribed physical therapy sessions as a retaliatory measure, as discussed below. Even accepting as true Plaintiff's assertion that he was denied physical therapy sessions, from his own admissions, Plaintiff would have been denied physical therapy sessions regardless of his placement in the Tier II program. For all of these reasons, Plaintiff has not alleged a plausible substantive due process violation against Defendant Toole based on his placement in the Tier II program. .

In sum, Plaintiff's due process claims should be **DISMISSED**.

## VII.     Injunctive Relief Claims

Though not filed as a separate motion, Plaintiff does seek interlocutory injunctive relief. To be entitled to a preliminary injunction, the movant must show: (1) a substantial likelihood of ultimate success on the merits; (2) an injunction or protective order is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the injunction or protective order would inflict on the non-movant; and (4) the injunction or protective order would not be adverse to the public interest.  Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225–26 (11th Cir. 2005).  In this Circuit, an "injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to the four requisites." Horton v. City of Augustine, Fla., 272 F.3d 1318, 1326 (11th Cir. 2001).  Plaintiff has not shown that he has satisfied the prerequisites in order to be entitled to an injunction.  Specifically, Plaintiff has not shown the likelihood of success on the merits of his claims or that an injunction is even necessary since he is no longer housed at GSP.  Thus, Plaintiff's injunctive relief request should be **DENIED**.  This is not to say that Plaintiff may not obtain injunctive relief at some other stage of this proceeding.  However, at this time, the Court should not provide such an extraordinary remedy.

## VIII.   Appointment of Counsel

Plaintiff also requests the appointment of counsel.  In this civil case, Plaintiff has no constitutional right to the appointment of counsel.  Wright v. Langford, 562 F. App'x 769, 777 (11th Cir. 2014) (citing Bass v. Perrin, 170 F.3d 1312, 1320 (11th Cir. 1999)).  "Although a court may, pursuant to 28 U.S.C. § 1915(e)(1), appoint counsel for an indigent plaintiff, it has broad discretion in making this decision, and should appoint counsel only in exceptional circumstances."  Id. (citing Bass, 170 F.3d at 1320).  Appointment of counsel in a civil case is a

"privilege that is justified only by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner." Fowler v. Jones, 899 F.2d 1088, 1096 (11th Cir. 1990) (citing Poole v. Lambert, 819 F.2d 1025, 1028 (11th Cir. 1987), and Wahl v. McIver, 773 F.2d 1169, 1174 (11th Cir. 1985)). The Eleventh Circuit has explained that "the key" to assessing whether counsel should be appointed "is whether the pro se litigant needs help in presenting the essential merits of his or her position to the court. Where the facts and issues are simple, he or she usually will not need such help." McDaniels v. Lee, 405 F. App'x 456, 457 (11th Cir. 2010) (quoting Kilgo v. Ricks, 983 F.2d 189, 193 (11th Cir. 1993)).

The Court has reviewed the record and pleadings in this case and finds no "exceptional circumstances" warranting the appointment of counsel. While the Court understands that Plaintiff is incarcerated, this Court has repeatedly found that "prisoners do not receive special consideration notwithstanding the challenges of litigating a case while incarcerated." Hampton v. Peeples, No. CV 614-104, 2015 WL 4112435, at *2 (S.D. Ga. July 7, 2015). "Indeed, the Eleventh Circuit has consistently upheld district courts' decisions to refuse appointment of counsel in 42 U.S.C. § 1983 actions similar to this case for want of exceptional circumstances." Id. (citing Smith v. Warden, Hardee Corr. Inst., 597 F. App'x 1027, 1030 (11th Cir. 2015); Wright, 562 F. App'x at 777; Faulkner v. Monroe Cty. Sheriff's Dep't, 523 F. App'x 696, 702 (11th Cir. 2013); McDaniels, 405 F. App'x at 457; Sims v. Nguyen, 403 F. App'x 410, 414 (11th Cir. 2010); Fowler, 899 F.2d at 1091, 1096; Wahl, 773 F.2d at 1174). This case is not so complex legally or factually to prevent Plaintiff from presenting "the essential merits of his position" to the Court. For these reasons, Plaintiff's request is **DENIED**.

## IX. Deliberate Indifference to Serious Medical Need (Delay)

Plaintiff asserts Defendants Sabine, Brewton, and Toole refused to allow him to participate in his prescribed physical therapy sessions. Plaintiff also asserts that, by not being able to participate in his physical therapy sessions, the condition of his shoulder worsened. Plaintiff's claims give rise to plausible Eighth Amendment claims.

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon prison officials to take reasonable measures to guarantee the safety of prison inmates. This duty to safeguard also embodies the principle expressed by the Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), forbidding prison officials from demonstrating deliberate indifference to the serious medical needs of inmates. Farmer v. Brennan, 511 U.S. 825, 832 (1994). However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

To prevail on a deliberate indifference claim, an inmate must demonstrate "(1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Youmans v. Gagnon, 626 F.3d 557, 563 (11th Cir. 2010). A medical need is serious if it "'has been diagnosed by a physician as *mandating* treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007) (quoting Hill, 40 F.3d at 1187) (emphasis supplied). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive

risk to an inmate's health and safety." <u>Haney v. City of Cumming</u>, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." <u>Goebert</u>, 510 F.3d at 1327. To prove a delay in providing medical treatment caused harm, a plaintiff must present evidence of: "'(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay.'" <u>Keele v. Glynn Cty., Ga.</u>, 938 F. Supp. 2d 1270, 1292 (S.D. Ga. 2013) (quoting <u>Goebert</u>, 510 F.3d at 1327).

At this initial stage, Plaintiff's deliberate indifference claims against Defendants Sabine, Brewton, and Toole are viable Eighth Amendment claims.[3]

## X. Retaliation Claims

Plaintiff contends Defendants Fountain and Toole failed to overturn sanctions he received in disciplinary proceedings because these two Defendants retaliated against him for filing grievances and lawsuits. Plaintiff contends Defendants Toole, Brewton, and Sabine knew that denying Plaintiff his prescribed treatment would cause him unnecessary pain, and this denial was retaliatory in response to the filing of <u>Shaw v. Toole</u>, Case Number 6:14-cv-48 (S.D. Ga.). Plaintiff also contends Defendant Upton ordered and condoned this retaliatory action. Plaintiff asserts Defendants Upton and Toole had the tactical squad confiscate Plaintiff's property and placed him on long-term disciplinary segregation (Tier II) despite Plaintiff not having any disciplinary reports against him for over a year. (Doc. 1, p. 17.)[4]

---

[3] As set forth in Section III of this Report, however, Plaintiff's claims only are cognizable from June 12, 2014, forward.

[4] The Court notes that, based on how Plaintiff structured his Complaint, these retaliatory events occurred after June 12, 2014, and thus, are not barred in this cause of action.

"It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011). It is also established that an inmate may maintain a cause of action against prison administrators who retaliate against him for making such complaints. Id. (quoting Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008) (internal citation and punctuation omitted)). "To establish a First Amendment retaliation claim, a prisoner need not allege the violation of an additional separate and distinct constitutional right; instead, the core of the claim is that the prisoner is being retaliated against for exercising his right to free speech." O'Bryant, 637 F.3d at 1212. "To prevail, the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." Smith, 532 F.3d at 1276 (citing Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)).

Here, Plaintiff's claims set forth plausible retaliation claims. Plaintiff arguably asserts that a prisoner of "ordinary firmness" may have been deterred from exercising his First Amendment rights based on Defendants' alleged actions following Plaintiff's communications. Bennett, 423 F.3d at 1252 (noting "adverse effect" depends on the context of the alleged action and focuses on "the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts[ ]") (citing Thaddeus–X v. Blatter, 175 F.3d 378, 398 (6th Cir. 1999)). Thus, Plaintiff's retaliation claims against Defendants Sabine, Brewton, Toole, and Upton remain pending.

## XI.     Access to Courts Claims

Access to the courts is clearly a constitutional right, grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment." Chappell v. Rich, 340 F.3d 1279, 1282 (11th Cir. 2003) (citing Christopher v. Harbury, 536 U.S. 403, 415 n.12 (2002)).  In order to pass constitutional muster, the access allowed must be more than a mere formality.  Bounds v. Smith, 430 U.S. 817, 822 (1977); Chappell, 340 F.3d at 1282.  The access must be "adequate, effective, and meaningful." Bounds, 730 U.S. at 822.  For an inmate to state a claim that he was denied access to the courts, he must establish that he suffered "actual injury" by showing that the defendant's actions hindered his ability to pursue a nonfrivolous claim.  Christopher, 536 U.S. at 415; Jackson v. State Bd. of Pardons & Paroles, 331 F.3d 790, 797 (11th Cir. 2003).  The pursuit of claims which are protected are those in which a plaintiff is attacking his sentence, directly or collaterally, or challenging the conditions of his confinement.  See Lewis v. Casey, 518 U.S. 343 (1996).  Stated another way, the "only specific types of legal claims [which] are protected by this right [are] the nonfrivolous prosecution of either a direct appeal of a conviction, a habeas petition, or a civil rights suit." Hyland v. Parker, 163 F. App'x 793, 798 (11th Cir. 2006) (citing Bass v. Singletary, 143 F.3d 1442, 1445 (11th Cir. 1998)).  "Actual injury" is an essential element to a claim asserting the denial of access to the courts.  See Christopher, 536 U.S. at 415.

Here, Plaintiff asserts Defendants Fountain, Toole, and Smith caused several of his grievances to be destroyed.  In turn, Plaintiff alleges his Complaint in Case Number 6:14-cv-48 was dismissed.  Plaintiff arguably sets forth plausible claims that Defendants Fountain, Toole, and Smith interfered with or hindered his access to the courts.

## XII. Conspiracy Claim

A conspiracy to violate another person's constitutional rights gives rise to a Section 1983 action. "To establish a prima facie case of a [S]ection 1983 conspiracy, a plaintiff must show, among other things, that defendants 'reached an understanding to violate [his] rights.'" Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1283 (11th Cir. 2007) (quoting Strength v. Hubert, 854 F.2d 421, 425 (11th Cir. 1988)). A "plaintiff does not have to produce a 'smoking gun' to establish the 'understanding' or 'willful participation' required to show a conspiracy, but must show some evidence of agreement between the defendants." Id. at 1283–84 (quoting Bendiburg v. Dempsey, 909 F.2d 463, 469 (11th Cir. 1990)). "[T]he linchpin for conspiracy is agreement." Bailey v. Bd. of Cty. Comm'rs of Alachua Cty., 956 F.2d 1112, 1122 (11th Cir. 1992). "[M]erely string[ing] together" alleged acts of individuals is not sufficient to establish the existence of a conspiracy. Harvey v. Harvey, 949 F.2d 1127, 1133 (11th Cir. 1992).

Plaintiff contends Defendants Fountain and Toole acted in concert to provide "bogus" responses to his appeals of the disciplinary proceedings against him. (Doc. 1, p. 20.) Plaintiff also contends Defendants Fountain, Toole, and Smith created a false memo to cover up their "illegal acts through a widespread practice/policy designed or used to deny access to the grievance procedure." (Id. at p. 22.) At the initial stage of these proceedings, Plaintiff states plausible conspiracy claims against Defendants Fountain, Toole, and Smith.

## CONCLUSION

For the numerous reasons set forth above, I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims for monetary damages relief against Defendant Upton in his official capacity. Additionally, I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims against Defendant Paul, Plaintiff's claims accruing on or before June 12, 2014, his deprivation of property claims,

access to the grievance procedure claims, First Amendment free exercise claims, and his RLUIPA claims. Further, I **RECOMMEND** that the Court **DENY** Plaintiff's request for preliminary injunctive relief. Plaintiff's request for appointment of counsel is **DENIED**.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the Plaintiff.

## REMAINING CLAIMS AND DEFENDANTS

Plaintiff's allegations in his Complaint arguably state colorable deliberate indifference, denial of access to the courts, retaliation, due process, and conspiracy claims against Defendants Upton, Toole, Brewton, Sabine, Smith, and Fountain. Consequently, a copy of Plaintiff's Complaint and a copy of this Order shall be served upon Defendants Upton, Toole, Brewton, Sabine, Smith, and Fountain by the United States Marshal without prepayment of cost. The Court also provides the following instructions to the parties that will apply to the remainder of this action and which the Court urges the parties to read and follow.

## INSTRUCTIONS TO DEFENDANTS

Even though Plaintiff is not proceeding *in forma pauperis*, the undersigned directs that service be effected by the United States Marshal since Plaintiff is incarcerated. See Fed. R. Civ. P. 4(c)(3). In most cases, the marshal will first mail a copy of the complaint to the Defendants by first-class mail and request that the defendant waive formal service of summons. Fed. R. Civ. P. 4(d); Local Rule 4.7. Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. Fed. R. Civ. P. 4(d)(2). Generally, a defendant who timely returns the waiver is not required to answer the complaint until sixty (60) days after the date that the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendants are hereby granted leave of court to take the deposition of the Plaintiff upon oral examination. Fed. R. Civ. P. 30(a). Defendants are further advised that the Court's standard 140 day discovery period will commence upon the filing of the last answer. Local Rule 26.1. Defendants shall ensure that all discovery, including

the Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

In the event that Defendants take the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30. As the Plaintiff will likely not be in attendance for such a deposition, Defendants shall notify Plaintiff of the deposition and advise him that he may serve on Defendants, in a sealed envelope, within ten (10) days of the notice of deposition, written questions the Plaintiff wishes to propound to the witness, if any. Defendants shall present such questions to the witness seriatim during the deposition. Fed. R. Civ. P. 30(c).

## <u>INSTRUCTIONS TO PLAINTIFF</u>

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon their attorneys, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendants or his counsel. Fed. R. Civ. P. 5. "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number." Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of immediately informing this Court and defense counsel of any change of address during the pendency of this action. Local Rule 11.1. Plaintiff's failure to notify the Court of a change in his address may result in dismissal of this case.

Plaintiff has the responsibility for pursuing this case. For example, if Plaintiff wishes to obtain facts and information about the case from Defendants, Plaintiff must initiate discovery.

<u>See</u> <u>generally</u>, Fed. R. Civ. P. 26, *et seq*.  The discovery period in this case will expire 140 days after the filing of the last answer.  Local Rule 26.1.  Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period.  Local Rule 26.1.  Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial.  Local Rule 26.4.

Interrogatories are a practical method of discovery for incarcerated persons.  <u>See</u> Fed. R. Civ. P. 33.  Interrogatories may be served only on a <u>party</u> to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are not <u>named</u> as a Defendant.  Interrogatories are not to contain more than twenty-five (25) questions.  Fed. R. Civ. P. 33(a).  If Plaintiff wishes to propound more than twenty-five (25) interrogatories to a party, Plaintiff must have permission of the Court.  If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorneys for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery.  Fed. R. Civ. P. 26(c); 37(a)(2)(A); Local Rule 26.7.

Plaintiff has the responsibility for maintaining his own records of the case.  If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page.  **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the**

collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Local Rule 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which may be initiated by Defendants. Upon no less than five (5) days' notice of the scheduled deposition date, the Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is required to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

## ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen (14) days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Local Rule 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendants'

motion.  Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within twenty-one (21) days after service of the motion.  Local Rules 7.5, 56.1.  The failure to respond to such a motion shall indicate that there is no opposition to the motion.  Furthermore, each material fact set forth in the Defendants' statement of material facts will be deemed admitted unless specifically controverted by an opposition statement.  Should Defendants file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case.  That burden cannot be carried by reliance on the conclusory allegations contained within the complaint.  Should the Defendants' motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the Defendants' statement of the facts.  Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendants' affidavits will be accepted as true and summary judgment may be entered against the Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 2nd day of March, 2016.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA