**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

DEXTER SHAW,

            Plaintiff,

    v.

STEVE UPTON; WARDEN ROBERT
TOOLE; JOHN PAUL; JANET BREWTON;
ROY SABINE; MILTON SMITH; and LISA
FOUNTAIN,

            Defendants.

CIVIL ACTION NO.: 6:16-cv-6

---

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Presently before the Court are Defendants' Motions to Dismiss.  (Docs. 25, 45.) Defendants argue that Plaintiff has failed to exhaust his administrative remedies as to a number of claims he brings in this case.  For the reasons stated below, I **RECOMMEND** that the Court **GRANT** Defendants' Motions.   Thus, the Court should **DISMISS** the following claims: (1) deliberate indifference to serious medical needs claims against Defendants Sabine, Brewton, and Toole; (2) all retaliation claims except Plaintiff's claim that Defendants Upton and Toole placed him on long-term disciplinary segregation; (3) conspiracy claims against Defendants Fountain, Toole, and Smith; and (4) deliberate indifference to medical needs claims, for failure to provide nutrition necessary for healing, against all Defendants.  Additionally, the Court should **DISMISS AS MOOT** any and all claims for injunctive relief, including Plaintiff's Religious Land Use and Institutionalized Persons Act, ("RLUIPA"), 42 U.S.C. § 2000cc-1, *et al.*, claims for injunctive relief against all Defendants.

Additionally, the Court **DENIES** Plaintiff's Motion for Reconsideration, (doc. 36), **DISMISSES AS MOOT** Plaintiff's Motion to Supplement in Support of his Motion to Stay, (doc. 37), **GRANTS** Plaintiff's Motion to Amend his Complaint, (doc. 46), and **DENIES** his Motion for an Evidentiary Hearing (doc. 47).

## BACKGROUND

In his 27-page Complaint, Plaintiff set forth various and wide-ranging claims against the named Defendants. (Doc. 1.) On March 2, 2016, I conducted the requisite frivolity review of Plaintiff's Complaint and concluded he set forth the following plausible claims: 1) deliberate indifference to serious medical needs claims against Defendants Sabine, Brewton, and Toole; 2) retaliation claims against Defendants Fountain, Toole, Brewton, Sabine, and Upton; 3) access to court claims against Defendants Fountain, Toole, and Smith; and 4) conspiracy claims against Defendants Fountain, Toole, and Smith. (Doc. 4, pp. 19–23.) Accordingly, I directed service of Plaintiff's Complaint on these Defendants. (Id. at p. 25.)

In contrast, I recommended dismissal as to Plaintiff's deprivation of property, access to grievance procedure, and due process claims, as well as any claims arising from events occurring in 2010. (Id. at pp. 9–16.) I also originally recommended that the Court dismiss Plaintiff's religious exercise claims under the RLUIPA and the First Amendment and his claims against Defendant Paul based on the fact that the Court had dismissed similar claims in Shaw v. Toole, et al., 6:14-cv-48 (S.D. Ga. May 19, 2014)[1], and his appeal of that dismissal was still pending before the Eleventh Circuit Court of Appeals. (Id. at pp. 10–11.) However, Plaintiff subsequently supplemented the record with his alleged efforts at exhaustion following the dismissal in Shaw v. Toole. He also notified the Court that he dismissed his appeal in that case. Thus, on August 15, 2016, I modified my recommendation and found that Plaintiff's RLUIPA

---

[1] Hereinafter, the Court will refer to case 6:14-cv-48 as "Shaw v. Toole".

claims for injunctive relief against Defendants will proceed.  (Doc. 23.)  I also ordered the United States Marshals Service to serve Defendant Paul with this action.  However, I recommended that the Court dismiss all monetary damages claims against Defendants under the RLUIPA.  Id.

On September 20, 2016, the Court adopted the revised Report and Recommendations. (Doc. 33.)  Thus, as that Order explained, the following claims remain before the Court: 1) deliberate indifference to serious medical needs claims against Defendants Sabine, Brewton, and Toole; 2) retaliation claims against Defendants Fountain, Toole, Brewton, Sabine, and Upton; 3) denial of access to court claims against Defendants Fountain, Toole, and Smith; 4) conspiracy claims against Defendants Fountain, Toole, and Smith; 5) RLUIPA claims for injunctive relief against all Defendants; 6) violation of the right to First Amendment free exercise of religion claims against all Defendants; and 7) deliberate indifference to medical needs claims, not based on delay in treatment but on a failure to provide nutrition necessary for healing, against all Defendants.  (Id. at p. 3.)

## DISCUSSION

### I.     Denial of Plaintiff's Motion to Reconsider Denial of Appointment of Counsel

In his Motion for Reconsideration, (doc. 36), Plaintiff once again requests the Court to appoint counsel to represent him in this case.  The Court has twice rejected Plaintiff's request for counsel, first in its Order of March 2, 2016, (doc. 4), and again on May 9, 2016, (doc. 20).  In his most recent Motion, (doc. 36), Plaintiff reiterates his prior arguments that he cannot present the essential merits of his case to the Court.

The decision to grant a motion for reconsideration is committed to the sound discretion of the district court.  Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab.

<u>Servs.</u>, 225 F.3d 1208, 1216 (11th Cir. 2000).  Motions for reconsideration are to be filed only when "absolutely necessary" where there is: (1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact. <u>Bryan v. Murphy</u>, 246 F. Supp. 2d 1256, 1258–59 (N.D. Ga. 2003).  "An error is not 'clear and obvious' if the legal issues are 'at least arguable.'"  <u>United States v. Battle</u>, 272 F. Supp. 2d 1354, 1358 (N.D. Ga. 2003) (quoting <u>Am. Home Assurance Co. v. Glenn Estess & Assoc., Inc.</u>, 763 F.2d 1237, 1239 (11th Cir. 1985)).  Motions for reconsideration are not appropriate to present the Court with arguments already heard and dismissed, to repackage familiar arguments, or to show the Court how it "could have done it better" the first time.  <u>Pres. Endangered Areas of Cobb's History, Inc. v. United States Army Corps of Eng'rs.</u>, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), <i>aff'd</i>, 97 F.3d 1242 (11th Cir. 1996).

Plaintiff has not met the standard for a motion for reconsideration.  Plaintiff repeats the arguments raised in his previous Motions, which the Court has already rejected.  Plaintiff does not present any new evidence, change in law, or other development which would cause the Court to reverse course.  Moreover, Plaintiff's voluminous and detailed pleadings since the denial of his Motions for Counsel only confirm that he is more than capable of presenting the essential positions of his case without the assistance of an attorney.  Accordingly, the Court **DENIES** Plaintiff's Motion for Reconsideration.  The Court's Order dated May 9, 2016, remains the Order of the Court.

## II.     Dismissal of Plaintiff's Motion to Supplement in Support of his Motion to Stay

Following Defendants' Motion to Dismiss, Plaintiff filed Motions to Stay his Response to Defendants' Motion.   (Docs. 29, 34.) The Court construed these filings as requesting an extension of time to file a response and granted Plaintiff that additional time on September 29,

2016.  (Doc. 38.)  On that same date, Plaintiff filed his Motion to Supplement, (doc. 37), in which he offered additional filings and arguments in support of his Motion to Stay.  Because the Court already granted Plaintiff's Motion to Stay, it need not consider Plaintiff's Motion to Supplement.  Therefore, the Court **DISMISSES** Plaintiff's Motion to Supplement as **MOOT**.

## III.     Granting of Plaintiff's Motion for Leave to Amend

In his Motion for Leave to Amend, Plaintiff seeks to add additional factual allegations in support of this claims that Defendants Toole, Brewton, and Smith were deliberately indifferent to his medical needs by failing to provide him adequate nutrition following his shoulder surgery. (Doc. 46.)  Defendants argue that the Court should deny Plaintiff's Motion because these claims are futile.  (Doc. 50.)  Specifically, they maintain that these claims are due to be dismissed for Plaintiff's failure to exhaust administrative remedies.  (Id.)

Under Federal Rule of Civil Procedure 15(a), a party may amend his complaint once as a matter of right within twenty-one (21) days after service of a motion under Rule 12(b), (e), or (f).[2]  Even when a party may not amend as a matter of right, he may amend with the opposing party's written consent or the court's leave.  Fed. R. Civ. P. 15(b).  "The court should freely give leave when justice so requires."  Id.  "The function of Rule 15(a), which provides generally for the amendment of pleadings, is to enable a party to assert matters that were overlooked or were unknown at the time he interposed the original complaint or answer."  6 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1473 (emphases added); see also In re Engle Cases, 767 F.3d 1082, 1108 (11th Cir. 2014) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

---

[2]  The Eleventh Circuit has made clear that the Prison Litigation Reform Act ("PLRA") does not change this right to amend.  Brown v. Johnson, 387 F.3d 1344, 1349 (11th Cir. 2004) ("We agree with the majority of circuits that the PLRA does not preclude the district court from granting a motion to amend. Nothing in the language of the PLRA repeals Rule 15(a).").  Accordingly, the fact that the Court has already conducted a frivolity review of Plaintiff's Complaint and issued a Report and Recommendation does not deprive Plaintiff of his right to amend.  Id.

While leave to amend is generally freely given, it is by no means guaranteed.  The decision on whether to grant a motion to amend is within the sound discretion of the trial court.  Addington v. Farmer's Elevator Mut. Ins. Co., 650 F.2d 663, 666 (5th Cir. 1981).  In addition, a court need not allow leave to amend "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile."  In re Engle Cases, 767 F.3d at 1108–09 (quoting Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001)).

As laid out below, the Court should dismiss Plaintiff's claims that he was provided inadequate nutrition following his surgery.  Thus, the Court could deny Plaintiff's Motion to Amend as futile.  However, the better course is to allow Plaintiff to amend his Complaint and then assess Plaintiff's exhaustion efforts in light of that amendment.  Defendants will not be prejudiced by this course, as Plaintiff does not offer entirely new claims but merely a factual expansion of his already existing claims.  Consequently, the Court **GRANTS** Plaintiff's Motion for Leave to Amend and deems Plaintiff's Complaint Amended to include the allegations set forward in his Motion.  The Court will consider this amendment when assessing Defendants' Motion to Dismiss.

## IV.    Denial of Motion for an Evidentiary Hearing

In his Motion for an Evidentiary Hearing, (doc. 47), Plaintiff requests that the Court hold an evidentiary hearing regarding Defendants' Motion to Dismiss.  Through the parties' numerous briefs on the Motions to Dismiss, the Court already has sufficient information to assess these Motions.  Indeed, much of the evidence Plaintiff proposes to introduce at the hearing has already been attached to the parties' filings.  Accordingly, the Court will exercise its discretion to decide

these Motions without a hearing.  See S.D. Ga. L.R. 7.2 ("Motions shall generally be determined upon the motion and supporting documents filed as prescribed herein.").

**V.      Dismissal of Certain Claims due to Plaintiff's Failure to Exhaust Georgia State Prison's ("GSP") Available Administrative Remedies Before Filing Suit**

On September 1, 2016, Defendants Brewton, Fountain, Sabine, Smith, Toole, and Upton moved to dismiss certain of Plaintiff's claims for failure to exhaust administrative remedies. (Doc. 24.)   The later served Defendant Paul joined in that Motion on October 13, 2016. (Doc. 45.)  Specifically, Defendants claim that Plaintiff failed to fully exhaust GSP's grievance process as to the following claims: deliberate indifference to serious medical needs claims against Defendants Sabine, Brewton, and Toole; retaliation claims against Defendants Fountain, Toole, Brewton, Sabine, and Upton; conspiracy claims against Defendants Fountain, Toole, and Smith; and deliberate indifference claims related to insufficient nutrition to heal following surgery against all Defendants.  (Doc. 25, p. 4.)   Additionally, Defendants argue that, because Plaintiff is no longer housed at GSP, his claims for injunctive relief under the RLUIPA should be dismissed as moot.  (Id.)  Plaintiff responded in opposition to Defendants' Motions.  (Docs. 48, 53.)  He contends that he exhausted all remedies that were available to him.  (Id.)  Defendants filed a Reply to Plaintiff's Response on October 21, 2016, (doc. 49), and Plaintiff filed a Surreply on November 7, 2016, (doc. 55).

**A.      Standard of Review**

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss.  Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008).  "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment;

instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." Id. at 1374–75 (internal citation omitted). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit Court of Appeals set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

**B.**      **Legal Requirements for Exhaustion**

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court.  See Porter v. Nussle, 534 U.S. 516, 524 (2002).  Section 1997e(a) of Title 42 of the United States Code states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted."   In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory.  Porter, 534 U.S. at 523; see also O'Brien v. United States, 137 F. App'x 295, 301–02 (11th Cir. 2005) (finding lack of exhaustion where prisoner "prematurely filed his civil complaint . . . and . . . 'failed to heed that clear statutory command' requiring that his administrative remedies be exhausted before bringing suit").

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'"  Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)).   Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Woodford v. Ngo, 548 U.S. 81, 93 (2006).

The United States Supreme Court has noted exhaustion must be "proper."  Id. at 92.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly

structure on the course of its proceedings." Id. at 90–91.   In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378 ("To exhaust administrative remedies in accordance with the PLRA [(Prison Litigation Reform Act)], prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).   Additionally, the Supreme Court has "held that the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'   And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross v. Blake, ___ U.S. ___, 2016 WL 3128839, at *5 (June 6, 2016).

Furthermore, an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA.   Johnson, 418 F.3d at 1157–59; Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement).   Additionally, "[t]he only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012).

"However, 'while [Section] 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require

more.'"  Id. (quoting <u>Brown v. Sikes</u>, 212 F.3d 1205, 1207 (11th Cir. 2000)).  The purpose of Section 1997e(a) is not that "fact-intensive litigation" result over whether every fact relevant to the cause of action was included in the grievance.  <u>Hooks v. Rich</u>, CV605-65, 2006 WL 565909, at *5 (S.D. Ga. Mar. 7, 2006) (internal citation omitted).  "'As long as the basic purposes of exhaustion are fulfilled, there does not appear to be any reason to require a prisoner plaintiff to present fully developed legal and factual claims at the administrative level.'"  Id. (quoting <u>Irvin v. Zamora</u>, 161 F. Supp. 2d 1125, 1135 (S.D. Cal. 2001)).  Rather, Section 1997e(a) is intended to force inmates to give state prison authorities a chance to correct constitutional violations in their prisons before resorting to federal suit and to prevent patently frivolous lawsuits.  Id.

### C.     The Georgia Department of Corrections' Grievance Procedure

The Georgia Department of Corrections' grievance procedure is set forth in Standard Operating Procedure ("SOP") IIB05-0001.  (Doc. 25-2.)  This SOP does not require an inmate to attempt an informal resolution of his complaint before filing a formal grievance.  (Id. at p. 4.)  An inmate can file, with a few exceptions, "a grievance about any condition, policy, procedure, or action or lack thereof that affects the [inmate] personally."  (Id. at p. 5.)  Grievance forms must be available in the control rooms of all living units and must be provided upon request by an offender.  (Id. at p. 4.)  An inmate must submit a grievance form "no later than 10 <u>calendar</u> days from the date the [inmate] knew, or should have known, of the facts giving rise to the grievance."  (Id. at p. 7 (emphasis in original).)  A "calendar day" is "a 24 hour time period from midnight to midnight Monday through Sunday."  (Id. at p. 2.)  The inmate must use the prison's grievance form when filing the original grievance, and he must sign the grievance form and give it to any counselor.  (Id. at pp. 7–8.)  The counselor then gives the inmate the bottom portion of

the grievance form as a receipt and forwards the grievance to the Grievance Coordinator.  (Id. at p. 7.)

The Grievance Coordinator is to screen the grievance to determine whether the warden should accept the grievance or reject it.  (Id.)  The warden has a period of forty (40) calendar days from the date the inmate gave his grievance to the counselor to respond.  (Id. at p. 10.)  An extension of ten (10) calendar days can be granted once, provided the inmate is advised in writing of the extension before the original 40 calendar days have expired.  (Id.)  An inmate can file an appeal with the Commissioner's Office in the following instances: if the grievance coordinator rejects his original grievance; after the warden responds to the original grievance; or when the time allowed for the warden's decision has expired.  (Id. at pp. 10–11.)  The inmate has seven (7) calendar days in which to file this appeal.  (Id. at p. 11.)  The Commissioner has 100 calendar days after receipt to render a decision.  (Id. at p. 12)  These time limits may be waived for good cause.  (Id.)

### D.      Assessment of Plaintiff's Exhaustion

Defendants contend that Plaintiff filed five grievances during the six months he was housed at GSP in 2014.  (Doc. 25, p. 6.)  In support of this contention, Defendants attach documentation, including Plaintiff's grievance history, the actual grievances, responses, and appeals, as well as an affidavit from Jacquelyn Ayeni, the chief Counselor and Grievance Coordinator at GSP.  (Docs. 25-1, 25-3, 25-4.)  According to these records, Plaintiff only filed the following five grievances while at GSP:

- Grievance Number 172192, filed on April 29, 2014, in which Plaintiff alleges he was sexually assaulted by an officer, (doc. 25-4, pp. 1–6);

- Grievance Number 173334, filed on April 29, 2014, in which Plaintiff he was being deliberately denied vegan meals and denied access to the grievance procedure by Milton Smith, (doc. 25-4, pp. 7–14);

- Grievance Number 175400, filed on June 12, 2014, in which Plaintiff contends that he was being housed in segregation for retaliatory purposes, (doc. 25-4, pp. 15–25);

- Grievance Number 176537, filed on July 2, 2014, in which Plaintiff complained about the temperature in his cell and claimed the meal accommodations he had been provided were not sufficient and caused him to fall, (doc. 25-4, pp. 26–35); and

- Grievance Number 179534, filed on July 21, 2014, in which Plaintiff claimed that officers denied him medical care after a fall on July 15, 2014, (doc. 25-4, pp. 36–39).

Defendants contend that Plaintiff failed to exhaust certain claims through these grievances. Plaintiff generally argues that he exhausted all administrative remedies that were available to him.  He continually contends that prison officials refused to accept or destroyed his grievances.

### (1)     Whether GSP's Grievance Process was Available to Plaintiff

As an initial matter, the Court must assess whether SOP IIB05-0001's grievance process was actually available to Plaintiff while he was housed at GSP.  Though the Supreme Court rejected a "special circumstances" exception to exhaustion in <u>Ross v. Blake</u>, it reiterated that a prisoner need only exhaust those remedies which were available to him.  ___ U.S. at ___, 2016 WL 3128839, at *7 ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.")  The Court recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." <u>Id.</u>  First, the Court stated that, in some instances, the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to

aggrieved inmates." Id.  Thus, if the administrative procedure lacks authority or if the officials with apparent authority "decline ever to exercise it," the inmate has no obligation to exhaust the remedy.  Id.  Second, when administrative remedies are so confusing that they are "essentially 'unknowable,'" exhaustion is not required.  Id. at *8 (citing Goebert v. Lee Cty., 510 F.3d 1312, 1323 (11th Cir. 2007), and Turner, 541 F.3d at 1084).  Lastly, exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  Id.  However, the Supreme Court recognized that, "[g]iven prisons' own incentives to maintain functioning remedial processes, we expect that these circumstances will not often arise."  Id. at *7.

Plaintiff essentially argues that prison officials "thwart[ed] inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  Id. at *8.  Throughout his Response and Surreply, he repeatedly contends that prison officials destroyed several of his grievances and/or maintained a pattern or practice of refusing to file his grievances in in GSP's database.  Under the first Turner step, accepting all of Plaintiff's allegations as true, he establishes that GSP's grievance process was unavailable to him.

However, Plaintiff's claims of unavailability wither readily when subjected to the crucible of examination the second Turner step requires.  Again, under that step, the Court resolves any disputed factual issues and then assesses, under those findings, whether the prisoner has exhausted his available administrative remedies.  Turner, 541 F.3d 1083.  Having reviewed all of Plaintiff's and Defendants' filings, the Court finds Defendants' account of the availability of administrative remedies more credible than Plaintiff's.

In support of their Motion to Dismiss, Defendants offer the affidavit of GSP Grievance Coordinator Jacquelyn Ayeni.  (Doc. 25-1.)  Ayeni states that no inmates, including inmates in

14

isolation, segregation, or protective custody, may be denied access to the grievance procedure. (Id. at p. 3.)  Upon admission to GSP, all prisoners receive an oral explanation and an outline of the grievance process.  (Id.)  She further testifies that all inmates may review the entire grievance SOP, which is located in the prison's law library.  (Id.)  Ayeni avers that "Grievance forms are available in the control rooms of all dorms and must be provided to an inmate upon request. Staff assigned to isolation and segregation areas, which include the protective custody areas, must provide a grievance form to an inmate upon request."  (Id. at p. 4.)

Defendants also provided the affidavit of Fred Wilson, the Senior Counselor at GSP. (Doc. 49-1.)  Wilson is one of the counselors who Plaintiff claims destroyed or refused to accept grievances.  Wilson was a counselor at GSP during 2014, and he is familiar with Plaintiff.  (Id. at p. 1.)  Wilson states that, if he had received a grievance from Plaintiff, he would have given Plaintiff a receipt for the grievance and delivered the grievance to the prison's Grievance Coordinator to be entered into the prison's database.  (Id. at p. 3.)  Wilson goes on to state that he has been a counselor with the Georgia Department of Corrections ("GDC") for thirty years, and he does not recall any instance in which he issued a grievance receipt to an inmate and that receipt was not entered into the GDC's database.  (Id.)

These accounts, which the Court finds to be more credible than Plaintiff's conflicting account, contradict any argument that Plaintiff could not access GSP's grievance process. Plaintiff's self-serving evidence that counselors destroyed or refused to file his grievances is suspect.  Plaintiff offers handwritten grievance forms, which he contends are "carbon copies" of grievances he attempted to file.  However, the Court cannot ignore the possibility that Plaintiff created these documents after the fact to skirt his failure to grieve certain claims.  Indeed, in Shaw v. Toole, the Court already rejected similar arguments and similar evidence presented by

Plaintiff.  See Order, Shaw v. Toole, 6:14-cv-48 (S.D. Ga. Aug. 24, 2015), ECF No. 68.  Judge J. Randal Hall, who is also the presiding judge in this case, found that the document Plaintiff provided "does not appear to be written on a grievance form and it was not assigned a grievance number."  (Id. at p. 4.)  He also held that, even if the "document is a copy of a grievance which was submitted to a counselor, there is no evidence before the Court that this document was submitted to the Grievance Coordinator or that it was destroyed, as Plaintiff maintains."  (Id.)  Consequently, Judge Hall adopted the Magistrate Judge's rejection of Plaintiff's argument that prison officials thwarted his access to the grievance procedure.  (Id.)

Moreover, Plaintiff's grievance history belies any contention that prison officials thwarted his attempts to file grievances or otherwise made the grievance process unavailable to him.  Plaintiff filed five grievances from April 29, 2014, to July 21, 2014.  (Doc. 25-4.)  Not only did prison officials accept and file all of these grievances into GDC's database, they also accepted and filed all of Plaintiff's appeals pertaining to these grievances.  Id.  Moreover, Plaintiff's prolific history of filing grievances while incarcerated in GDC facilities flies in the face of his claims of unavailability.  (Doc. 25-3.)  Plaintiff has filed a total of approximately 168 grievances during his incarceration, with twelve of those having been filed at GSP.  Id.

Given Plaintiff's grievance history, as well as Ayeni's and Wilson's affidavits, any argument that Plaintiff makes regarding unavailability does not hold water.  Wright v. Langford, 562 F. App'x 769, 776 (11th Cir. 2014) ("[I]t was reasonable for the district court to find that [plaintiff's] purported ignorance of the five-day grievance filing period was not credible, given [plaintiff's] significant prior experiences filing grievances and lawsuits in federal court, as well as the jail official's affidavit stating that each [county] inmate is given a copy of the Inmate Handbook spelling out the grievance procedure.")  Furthermore, the fact that Defendants kept

and are able to produce records evidencing the many grievances Plaintiff filed contradicts his contention that Defendants destroyed documents to cover up his grievance filings. Additionally, this Court has previously rejected Plaintiff's claims that GSP officials destroyed his grievances in an attempt to hamper his access to the grievance procedure and conceal prison officials' actions. For all of these reasons, the Court should find that GSP's grievance process was available to Plaintiff while he was incarcerated at the prison.

> **(2)** **Whether Plaintiff Fully and Properly Exhausted GSP's Grievance Process as to his Deliberate Indifference to Serious Medical Needs Claims Against Defendants Sabine, Brewton, and Toole**

In his Complaint, Plaintiff asserts Defendants Sabine, Brewton, and Toole refused to allow him to participate in his prescribed physical therapy sessions. Plaintiff also asserts that, by not being able to participate in his physical therapy sessions, the condition of his shoulder worsened. (Doc. 16–21.) Defendants point out that Plaintiff never raised this denial of physical therapy in the above-listed grievances. They contend that Plaintiff's official grievance history reveals that he did not file any grievance regarding not receiving physical therapy for his shoulder following surgery. In response, Plaintiff contends that he filed a grievance with Counselor Wilson on October 2, 2014, and Wilson took the grievance and provided Plaintiff with a receipt. (Doc. 48, pp. 3–4.) Plaintiff attaches what he claims is a copy of that grievance and receipt to his Response. (Id. at p. 13.) He contends that his official grievance history does not reflect this grievance because it was destroyed, per the custom and practice at GSP. (Id. at p. 4.)

Even accepting Plaintiff's version of events as true, under the first Turner step, he failed to fully exhaust GSP's administrative remedies through this purported grievance. If Plaintiff filed this grievance on October 2, 2014, and he did not receive a response, as he claims, then his next step was to file an appeal with the Commissioner's Office. (Doc. 25-2, p. 11.) GSP's SOP

17

specifically provides for such an appeal once the Warden's time for responding to a grievance has expired without a response.  Id.  Plaintiff does not allege in his Response or in any other pleading that he attempted to file a Central Office Appeal when he did not receive a response to his purported October 2, 2014, grievance regarding not receiving physical therapy.  Again, an inmate must exhaust every step of the grievance process.  Woodford, 541 U.S. at 92; Johnson, 418 F.3d at 1157–59.

In his Surreply, Plaintiff contends that he did not file an appeal because the grievance had been destroyed and was not in the database.  (Doc. 55, p. 4.)  However, nothing in SOP IIB05-0001 prevented Plaintiff from filing an appeal in this situation.  Rather, if Plaintiff had filed a grievance, Plaintiff could file an appeal once the time allowed for a response expired.  It is of no moment whether Plaintiff thought that attempting to file an appeal in this situation would have been unsuccessful.  Plaintiff cannot simply spurn the process because he thinks it is futile. Higginbottom, 223 F.3d at 1261.  Rather, "the benefits of the exhaustion requirement 'are fully realized when an inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits, *even if the decision-maker could have declined to reach the merits because of one or more procedural deficiencies*.'"   Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1215 (11th Cir. 2015) (emphasis in original) (quoting (Hammett v. Cofield, 681 F.3d 945, 947 (8th Cir. 2012)).

Moreover, under the second Turner step, Plaintiff's contention that he filed a grievance on October 2, 2014, does not hold water.  As laid out above, Plaintiff's allegation that GSP officials routinely destroyed his grievances is not credible.  His contentions regarding his alleged October 2, 2014, filing only confirm this conclusion.  The exhibit that Plaintiff submits in support of his alleged October 2014 grievance is suspicious at best and raises obvious credibility

concerns.  The top portion of Plaintiff's exhibit is a recreation of a grievance form in Plaintiff's own handwriting.  In his Surreply, he contends that this exhibit is a "carbon copy" except for the receipt at the bottom of the exhibit which is the "original."  (Doc. 55, p. 1.)  However, the "carbon copy" is not a complete copy, as it does not contain many of the hallmarks of a grievance from.[3]  Thus, at best, Plaintiff created this exhibit by combining his handwritten copy of the grievance form with the actual receipt Counselor Wilson signed.  The document provides no inherent assurance that the receipt Plaintiff proffers at the bottom of the exhibit originally accompanied or corresponded with top portion of the exhibit.  Rather, the fact that Plaintiff created at least the top portion of this exhibit only highlights the potential for the entire document to be a fabrication.  For instance, Plaintiff could alter a receipt for a grievance which he did file and attach it to a handmade "copy" of a grievance which he did not file that raises entirely different issues.  Moreover, the prospect that Plaintiff can "carbon copy" his grievances only raises the specter that he could also "carbon copy" Counselor Wilson's signature.[4]

Moreover, Defendants point out that Plaintiff's prior statements belie his recent representation that he filed a grievance on October 2, 2014.  In his Complaint, Plaintiff alleged that he filed grievances on August 7, August 20, and September 2, 2014, and that those grievances were destroyed.  (Doc. 1, p. 22.)  He did not mention an October 2, 2014, grievance.  He also did not mention an October 2, 2014, grievance when listing his grievances in Shaw v. Toole.  Brief, Shaw v. Toole, 6:14-cv-048 (S.D. Ga. June 15, 2015), ECF No. 57, pp. 10, 18.

---

[3]  A comparison between this supposed grievance, (doc. 48, p. 13), and the grievances that Plaintiff actually did file, (doc. 25-4, pp. 1, 7, 16, 26, 36), is telling.

[4]  As Plaintiff points out, Counselor Wilson states in his affidavit that the signature on the receipt is consistent with his handwriting.  (Doc. 49-1, p. 2.)  However, Wilson also raises the possibility that these markings could have been forged or traced from other grievance receipts he gave to Plaintiff.  (Id.)

Plaintiff only claimed to have filed a grievance on October 2, 2014, when faced with Defendants' Motion to Dismiss.

Additionally, Defendants attached an affidavit from Counselor Wilson in which he states that, if he had received a grievance from Plaintiff on October 2, 2014, he would have entered that grievance into the prison's database for tracking and documenting the grievance.  (Doc. 49-1, p. 3.)  This account is more credible than Plaintiff's contention that he filed a grievance on October 2, 2014, and that it was destroyed.

For all of these reasons, Plaintiff failed to exhaust GSP's administrative remedies as to his deliberate indifference claims against Defendants Sabine, Brewton, and Toole.

### (3) Whether Plaintiff Exhausted GSP's Remedies as to his Retaliation Claims against Defendants Fountain, Toole, Brewton, Sabine, and Upton

Plaintiff makes numerous allegations of retaliation against Defendants.  He contends Defendants Fountain and Toole failed to overturn sanctions he received in disciplinary proceedings because these two Defendants retaliated against him for filing grievances and lawsuits.  (Doc. 1, p. 17.)  Plaintiff also alleges Defendants Toole, Brewton, and Sabine knew that denying Plaintiff his prescribed treatment would cause him unnecessary pain, and this denial was retaliatory in response to the filing of Shaw v. Toole.  (Id.)  Plaintiff further contends Defendant Upton ordered and condoned this retaliatory action.  Lastly, he asserts Defendants Upton and Toole had the tactical squad confiscate Plaintiff's property and placed him on long-term disciplinary segregation (Tier II), despite Plaintiff not having any disciplinary reports against him for over a year.  (Id.)  Defendants contend that Plaintiff only grieved his claims of retaliation regarding being placed in segregation. (Doc. 49, p. 10.)  They argue that he never raised the other alleged actions of retaliation in the five grievances he filed while at GSP.

In his five grievances, Plaintiff does not complain of Defendants Fountain and Toole's alleged retaliatory refusal to overturn sanctions against him.  He first contends that he was not required to grieve these claims because disciplinary matters are not able to be grieved under GSP's grievance process.   (Doc. 48, p. 5.)   SOP IIB05-0001 specifically lists disciplinary actions, including any punishments, fees, or assessments, as items that an offender cannot grieve. (Doc. 25-2, p. 5.)  However, the SOP also provides, "Notwithstanding the above, an offender may file a grievance alleging retaliation or harassment, regardless of the form of the alleged retaliation or harassment."  (Id.)  Consequently, Plaintiff was required to grieve the disciplinary relation claims before suing on them.

Plaintiff next contends that he attempted to file grievances regarding the retaliatory discipline, but the counselor refused to provide him a receipt and the grievance was destroyed. (Doc. 48, p. 5.)  Thus, he contends that the grievance process was unavailable to him.  (Id.)  In support of this argument, he attaches a handwritten grievance, which he contends reflects his efforts to grieve these claims on September 24, 2014.  (Id. at p. 14.)  As an initial matter, even under Plaintiff's version of facts, he did not pursue this alleged grievance beyond the first stage. By failing to take any other steps, he did not fully and properly exhaust the remedies provided by SOP IIB05-0001 as to this claim.  Additionally, as discussed above regarding Plaintiff's alleged October 2, 2014, grievance, this September 24, 2014, exhibit is not credible.  Given all of the surrounding circumstances, this exhibit appears to be an after-the-fact attempt by Plaintiff to dodge his failure to exhaust his administrative remedies.  Defendants' version of Plaintiff's filing history is far more credible than Plaintiff's claim that prison officials destroyed this grievance. Consequently, under the second Turner step, the Court should find that Plaintiff failed to grieve

his claims of Defendants Fountain and Toole's alleged retaliatory refusal to overturn sanctions against him.

Similarly, the Court should reject Plaintiff's argument that he fully and properly grieved Defendants Toole, Brewton, and Sabine's retaliatory refusal to provide him physical therapy.  In Response to Defendants' Motion on these claims, Plaintiff once again relies upon the October 2, 2014, grievance he claims he filed with Counselor Wilson.  However, as laid out in the above discussion of Plaintiff's deliberate indifference claims, the Court should reject his reliance on that grievance.  Even under the first Turner step, Plaintiff failed to appeal this grievance to the Office of the Commissioner after the time elapsed for the Warden to file a response.  Moreover, proceeding to the second Turner step, the Court should reject Plaintiff's claim that he filed a grievance with Wilson on October 2, 2014, and that Wilson destroyed that grievance instead of placing it in the prison's database.  Wilson and Defendants' accounts on this point are far more credible than Plaintiff's.

Additionally, Plaintiff did not fully grieve the issue of retaliatory confiscation of property.  In his Response Brief, Plaintiff initially states that involuntary assignments to Tier II Segregation are not appealable.  (Doc. 48, p. 6.)  However, the claim at issue is confiscation of property, not assignment to Tier II Segregation.  Moreover, as explained above, because Plaintiff alleges Defendants' actions were retaliatory, he must have grieved the claim through SOP IIB05-0001 before filing suit.  (Doc. 25-2, p. 5.)  Plaintiff also argues that he filed a grievance complaining of all of the Defendants' retaliatory acts once his Tier II appeal was eliminated. (Doc. 48, p. 6.)  He falls back on the argument that the grievance is not reflected on his grievance history because prison officials destroyed the grievance.  Id.[5]  Once again, Plaintiff fails to

---

[5] Plaintiff does not provide a "carbon copy" of a grievance for this alleged grievance.  However, he does refer to an alleged grievance receipt filed in Shaw v. Toole.  (Doc. 55, (citing Exhibit, Shaw v. Toole,

demonstrate that he attempted to pursue this grievance beyond the first phase. Thus, his argument fails under the first <u>Turner</u> step. Additionally, if the Court proceeds to the second <u>Turner</u> step, it should reject Plaintiff's claim that he was not able to grieve the retaliatory confiscation of his property.

For all of these reasons, the Court should find that Plaintiff failed to fully and properly exhaust GSP's administrative remedies as to his retaliation claims except for his claim that Defendants Upton and Toole placed him on long-term Tier II disciplinary segregation.

### (4) Whether Plaintiff Exhausted GSP's Remedies as to his Conspiracy Claims against Defendants Fountain, Toole, and Smith

Plaintiff alleges Defendants Fountain and Toole conspired against him by providing allegedly "bogus" responses to his appeals of disciplinary proceedings and creating a "false memo" to cover up acts of a widespread policy designed to deny access to the grievance procedure. (Doc. 1, pp. 20–22.) Plaintiff argues that he filed a grievance on October 30, 2014, regarding these issues. (Doc. 48, pp. 6–7.) Even if Plaintiff filed this grievance as he claims, he did not pursue the grievance fully through all steps of GSP's grievance process. Moreover, as with the other grievances Plaintiff claims he filed, Defendants' evidence that Plaintiff never filed this grievance far outweighs Plaintiff's scant documentary evidence. The purported October 30, 2014, grievance is once again a handwritten exhibit, which appears as though Plaintiff created this exhibit after the fact to dodge his failure to grieve his conspiracy claims. In addition to the suspect nature of this exhibit, as with the grievances Plaintiff purports he filed on October 2, 2014, and September 24, 2014, Plaintiff did not include an October 30, 2014, grievance in his

---

6:14-cv-48 (S.D. Ga. June 15, 2015), ECF No. 57, p. 18).) The Court has reviewed this filing, and it is simply a receipt allegedly received on September 2, 2014. Even if this receipt were authentic, it provides no indication of what issues Plaintiff grieved in the corresponding grievance. Thus, Plaintiff has provided no indication that he properly exhausted his available administrative remedies as to this retaliatory action.

previous lists of grievances.   (Doc. 1, p. 22; Brief, <u>Shaw v. Toole</u>, 6:14-cv-048 (S.D. Ga. June 15, 2015), ECF No. 57, pp. 10, 18.)

For all of these reasons, the Court should find that Plaintiff failed to exhaust his claims that Defendants Fountain, Toole, and Smith conspired against him.

### (5) Whether Plaintiff Exhausted GSP's Remedies as to his Deliberate Indifference Claims Related to Insufficient Nutrition to Heal Following Surgery.

Plaintiff alleges that, following his surgery in May of 2014, he was not provided with sufficient nutrition to heal.  Defendants agree that Plaintiff filed a grievance in April of 2014 complaining that he was not provided with meals that comply with his religious beliefs. (Doc. 49, pp. 17–18.)  However, they maintain that Plaintiff's "pre-surgery complaints regarding his diet were not sufficient to notify prison officials that he was allegedly being subjected to deliberate indifference to a serious medical need following his surgery."  (<u>Id.</u> at p. 18.)  Plaintiff argues that his April of 2014 grievance regarding inadequate nutrition provided sufficient notice to prison officials of this claim.  (Doc. 55, p. 6.)  He contends that GSP's grievance process did not require him to file a subsequent grievance for this ongoing violation.  (<u>Id.</u>)

In his Grievance Number 173334, filed on April 29, 2014, Plaintiff complained that he was not being provided a vegan meal in accordance with his religious beliefs.  (Doc. 25-4, pp. 7–8.)  He stated that prison officials told him to "eat around the animal products" and that "there is no way[ ]I can receive adequate nutrition eating such."  (<u>Id.</u>)  He made no mention of his medical needs or his upcoming surgery.  Rather, he alleged that the failure to provide a vegan meal substantially burdens his religious exercise.  (<u>Id</u> at p. 8.)

While Plaintiff sufficiently vetted his religious exercise claims with Grievance Number 173334, he did not grieve his medical needs claims.  Those claims arose after his

surgery, which occurred after he filed Grievance Number 173334.  To be sure, Plaintiff complained of "inadequate nutrition" in this grievance.  However, as explained in the Court's August 15, 2016, Report and Recommendation, Plaintiff's deliberate indifference claim is not centered merely on a lack of adequate food.  (Doc. 23, pp. 8–9.)  Rather, it centers on Defendants allegedly disregarding Plaintiff's medical needs brought on by his shoulder surgery.  Id.  As Grievance Number 173334 postdated that surgery, it did not alert prison officials to medical needs resulting from the surgery, much less Defendants' alleged deliberate indifference to those needs.  Plaintiff's amendment to his Complaint, (doc. 48), only highlights the difference between Grievance Number 173334 and his deliberate indifference claims.  In that amendment, Plaintiff claims, among other things, that: Defendants Toole, Paul, Brewton, and Smith allowed him to be put to sleep during the surgery while depriving him of adequate nutrition; on May 28, 2014, Defendants Paul and Brewton were made aware of his lack of nutrients because his shoulder continued to bleed and ooze puss after the surgery; and Plaintiff refused to come out of the yard so that he could be transferred to medical.  (Id. at p. 2.)  Grievance Number 173334 made no mention of these claims.

Additionally, Plaintiff did not raise any claim regarding inadequate nutrition during his appeal of the Warden's response to Grievance Number 173334.  (Doc. 25-4, p. 14.)  Rather, Plaintiff only complained that the failure to provide him a vegan meal violated his established religious beliefs.  (Id.)  Thus, even if Plaintiff had raised his deliberate indifference claim in his original grievance, he did not exhaust all available remedies as to that claim.

For all of these reasons, the Court should find that Plaintiff failed to exhaust GSP's available remedies as to his claims that Defendants were deliberate indifferently to his medical needs by failing to provide him adequate nutrition to heal following surgery.

VI.     **Dismissal of Injunctive Relief Claims as Moot**

On August 15, 2016, the Court specifically sanctioned Plaintiff's claims for injunctive relief under the RLUIPA. (Doc. 23, pp. 5–6.) Additionally, Plaintiff requested injunctive relief in his Complaint. (Doc. 1, p. 26.) However, since the filing of this action, Plaintiff has been transferred from GSP to Valdosta State Prison. (See Doc. 18-1, p. 6.) Thus, Defendants move to dismiss Plaintiff's injunctive relief claims for mootness. (Doc. 25, pp. 8–9.) Plaintiff has not addressed this argument in his Response and Surreply.

An inmate's claim for injunctive relief against prison officials is subject to dismissal for mootness when the prisoner is transferred to another prison and is no longer subject to the condition for which injunctive relief is sought. Smith v. Allen, 502 F.3d 1255, 1275 (11th Cir. 2007), *abrogated on other grounds by* Sossamon v. Texas, 563 U.S. 277 (2011); Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988) (per curiam); Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985) (per curiam). Because of his transfer to Valdosta State Prison, Plaintiff no longer needs relief from the allegedly unlawful conditions he was subjected to at GSP. Consequently, the Court should **DISMISS AS MOOT** any and all claims for injunctive relief.

## CONCLUSION

The Court **DENIES** Plaintiff's Motion for Reconsideration, (doc. 36), **DISMISSES AS MOOT** Plaintiff's Motion to Supplement in Support of his Motion to Stay, (doc. 37), **GRANTS** Plaintiff's Motion to Amend his Complaint, (doc. 46), and **DENIES** his Motion for an Evidentiary Hearing, (doc. 47).

Additionally, I **RECOMMEND** that the Court **GRANT** Defendants' Motions to Dismiss. Thus, the Court should **DISMISS** the following claims for Plaintiff's failure to exhaust his administrative remedies: (1) deliberate indifference to serious medical needs claims against

Defendants Sabine, Brewton, and Toole; (2) all retaliation claims except his claim that Defendants Upton and Toole placed him on long-term disciplinary segregation; (3) conspiracy claims against Defendants Fountain, Toole, and Smith; and (4) deliberate indifference to medical needs claims, for failure to provide nutrition necessary for healing, against all Defendants. Additionally, the Court should **DISMISS AS MOOT** any and all claims for injunctive relief, including Plaintiff's RLUIPA claims for injunctive relief, against all Defendants. To be clear, the only claims that should remain are the following claims: (1) denial of access to court claims against Defendants Fountain, Toole, and Smith; (2) claims that Defendants Upton and Toole retaliated against Plaintiff by placing him on long-term disciplinary segregation; and (3) violation of the right to First Amendment free exercise of religion claims against all Defendants.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not

meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

       **SO ORDERED** and **REPORTED and RECOMMENDED**, this 13th day of February, 2017.

                                 R. STAN BAKER
                                 UNITED STATES MAGISTRATE JUDGE
                                 SOUTHERN DISTRICT OF GEORGIA